# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DELBERT MOSELY, | ) |
|        Plaintiff, | ) |
| | ) No. 4:07-CV-1578 CAS |
| v. | ) |
| S.K. HIGHSMITH, et al., | ) |
|        Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants Dr. S.K. Highsmith, Dr. Elizabeth Conley, Dr. Ernest Jackson, Gail Wollberg, and Correctional Medical Services' motion for summary judgment. Plaintiff opposes the motion. For the following reasons, the Court concludes that defendants' motion for summary judgment should be granted.

**I.  Background**.

This is an action for deprivation of constitutional rights pursuant to 42 U.S.C. § 1983, which alleges deliberate indifference to a serious medical need. At the time of the allegations, plaintiff Delbert Mosely was an inmate of the Missouri Department of Corrections confined at the Missouri Eastern Correctional Center ("MECC") located in Pacific, Missouri. The remaining defendants are Dr. S.K. Highsmith (Dentist, MECC), Dr. Elizabeth Conley (Regional Director, CMS), Dr. Ernest Jackson (Dentist, Institutional Dental Services), Gail Wollberg (Director of Nursing, MECC), and Correctional Medical Services (collectively "defendants"). Plaintiff's complaint alleges that he sought treatment for a toothache from defendant Dr. Highsmith on June 14, 2006. Plaintiff claims that he wanted Dr. Highsmith to put a filling in tooth #24, but Dr. Highsmith would not treat tooth

#24 unless she could first extract tooth #21. Plaintiff alleges Dr. Highsmith's failure to treat tooth #24 unless he agreed to extraction of tooth #21 amounts to a deprivation of medical care in violation of the Eighth Amendment. Plaintiff's complaint seeks a preliminary and permanent injunction, declaratory judgment, damages in the amount of seventy thousand dollars, and attorneys' fees and costs.

**II.      Legal Standard**.

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir.), cert. denied, 528 U.S. 1063, (1999). The non-moving party "must do more than simply show that there is some metaphysical

doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

**III.   Facts**.

At all relevant times, defendant Dr. S.K. Highsmith, a licensed dentist in the State of Missouri, provided dental care to Missouri inmates, including plaintiff Delbert Mosely, at MECC in Pacific, Missouri. Dr. Highsmith's first dental encounter with plaintiff was on January 17, 2006, and plaintiff reported that no tooth was bothering him.

On April 3, 2006, plaintiff submitted a medical services request ("MSR") form stating that a filling came out and he was experiencing pain. Dr. Highsmith examined plaintiff on May 2, 2006 for these complaints. During this examination, Dr. Highsmith took one PA (periapical) x-ray of tooth #24, which showed that plaintiff had a chip on the corner of tooth #24. Plaintiff's tooth #24 was chipped horizontally across the tooth, but according to Dr. Highsmith, the tooth showed no signs of dental cavity, decay, abscess, infection, or root damage. In her affidavit, Dr. Highsmith states that the nature and extent of the chip at plaintiff's tooth #24, coupled with the lack of decay or any associated nerve damage, was cosmetic. She states that she considered filling the chip at tooth #24 as an option for plaintiff; however, once she further examined the tooth, she concluded

that the tooth would not hold a filling. Dr. Highsmith also believed that a filling at tooth #24 could cause further damage to the existing tooth and possibly cause the tooth to break off at the gum line.[1] Plaintiff states that Dr. Highsmith told him the tooth needed a filling, but that filling tooth #24 would be for cosmetic reasons only, and that she would not perform any cosmetic work on any teeth.[2]

On June 9, 2006, Dr. Highsmith examined plaintiff again. During this examination, Dr. Highsmith noted that plaintiff's tooth #21 had a large draining dental fistula. A draining dental fistula forms in response to an infection at the base of the tooth's root. A fistula can also form in reaction to an abscess, cyst, or other inflammation within the mouth. Fistulae are essentially channels that form within the bone or soft tissue to give the infection an avenue for drainage. Dr. Highsmith took a PA (periapical) x-ray of plaintiff's tooth #21 that showed radicular abscessing, which is an infection at the root. Dr. Highsmith recommended tooth #21 be extracted, but plaintiff refused to allow the tooth to be extracted.

On June 14, 2006, Dr. Highsmith again examined plaintiff regarding his complaint of pain in tooth #24. During the examination, Dr. Highsmith again recommended that tooth #21 be extracted because of the localized infection. Dr. Highsmith explained to plaintiff that tooth #21 was abscessed (infected) and the source of his dental pain.[3] In Dr. Highsmith's dental opinion, the

---

[1]Plaintiff states that he "den[ies]" these facts, but rather than deny the substance of these facts, he states merely that "[d]efendant Highsmith never told plaintiff" of these facts. See Pl.'s Resp. to Defs.' Statement of Uncontroverted Material Facts, ¶¶ 13-14. Plaintiff has not retained an expert to contradict any of Dr. Highsmith's medical opinions.

[2]The medical records of this visit are inconsistent. Dr. Highsmith's written notations do not reflect that plaintiff needed a filling. On the type-written records, however, the assessment states "needs filling." Compare Defs.' Statement of Material Facts, Ex. C, 108 and Defs.' Statement of Material Facts, Ex. C, 383.

[3]Plaintiff does not deny that Dr. Highsmith explained to him that the abscessed tooth #21 was the source of his pain. He states, however, that "Plaintiff never experienced pain in tooth #21." As

removal of tooth #21 was the best course of treatment. Medical therapy or antibiotics were not required at that time because the infection was localized at tooth #21 only. Plaintiff refused to allow Dr. Highsmith to extract tooth #21.

On June 29, 2006 and July 13, 2006, plaintiff submitted MSR forms requesting a filling. On July 18, 2006, Dr. Highsmith examined plaintiff again for his request for a filling at tooth #24. During this examination, Dr. Highsmith explained to plaintiff that tooth #21 should be pulled because it was abscessed and infected. Plaintiff refused Dr. Highsmith's dental advice and treatment to extract #21.

On July 19, 2006, plaintiff submitted another MSR form requesting a filling. Dr. Highsmith examined plaintiff again on July 31, 2006 for his request to have tooth #24 filled. The medical records from this visit state that Dr. Highsmith "explained that filling will not hold and there is no new decay." Dr. Highsmith explained again that tooth #21 needed to be extracted because it was infected. Plaintiff refused to allow Dr. Highsmith to extract tooth #21.

On August 8, 2006, plaintiff submitted a MSR form stating that he had a toothache, he wanted a filling, and he did not want tooth #21 pulled. Plaintiff also requested pain medication. Dr. Highsmith examined plaintiff on August 18, 2006. The parties disagree as to whether Dr. Highsmith explained to plaintiff at this point that tooth #24 would not hold a filling. Dr. Highsmith offered plaintiff a temporary crown for tooth #24, and this temporary crown was specially ordered for plaintiff. The parties disagree as to whether the crown was ordered for plaintiff's cosmetic purposes only or for purposes of alleviating pain.

---

discussed in Part IV, infra, plaintiff's "difference of opinion over matters of expert medical judgment or a prescribed course of medical treatment fails to state a federal constitutional question." Randall v. Wyrick, 642 F.2d 304, 308 (8th Cir. 1981).

During plaintiff's examination on August 18, 2006, Dr. Highsmith noted that plaintiff had poor oral hygiene and gingival inflammation causing his gums to bleed at tooth #24. She advised plaintiff that he needed to brush his teeth more frequently. Dr. Highsmith again advised plaintiff to have tooth #21 extracted because of infection.

On August 21, 2006, plaintiff submitted a MSR for his complaints of a toothache that was causing him pain, "not 21." On August 29, 2006, Dr. Highsmith examined plaintiff for complaints of pain at tooth #24 that woke him up at night. It was Dr. Highsmith's opinion that plaintiff's report of pain at tooth #24 was either caused by his gum inflammation or the infection at tooth #21.[4]

On August 29, 2006, Dr. Highsmith incorrectly wrote in her record entry that plaintiff's tooth #24 had "deep decay." Dr. Highsmith intended to write that tooth #21, not #24 had deep decay as she had documented in each of her previous dental entries. Plaintiff's tooth #24 never showed any signs of decay or infection on exam or in any of his x-ray films.[5]

Dr. Highsmith examined plaintiff again on September 15, 2006 for his request for a "cap." Dr. Highsmith cemented the temporary crown on plaintiff's tooth #24 to satisfy his request. Dr. Highsmith also noted plaintiff only had four mandibular (lower) teeth. Dr. Highsmith strongly encouraged plaintiff to have tooth #21 extracted because it was infected, but he again refused her dental recommendation.

---

[4]Plaintiff's "denial" of this fact is merely a statement that Dr. Highsmith never communicated this fact to plaintiff. Pl.'s Resp. to Defs.' Statement of Uncontroverted Material Facts ¶ 40.

[5]Plaintiff denies that tooth #24 never showed any signs of decay or infection on exam or on x-ray films. His denial is not supported by citation to the record. Pursuant to Local Rule 4.01(E), the Court will deem the facts admitted.

Plaintiff made no dental complaints for the next seven months. On March 27, 2007, he submitted a MSR for a complaint of a cavity. On April 3, 2007, Dr. Highsmith examined plaintiff for his complaint of a cavity at tooth #9. Dr. Highsmith noted that plaintiff's tooth #21 now had a large radicular lesion (lesion at the end of the root), consistent with pyogenic granuloma. Pyogenic granuloma is a benign, localized mass of tissue produced by the body as the result of an infection.

Plaintiff's tooth #21 was deteriorating, and Dr. Highsmith again advised plaintiff that tooth #21 needed to be extracted "ASAP" and the lesions needed to be biopsied. Dr. Highsmith ordered one PA (periapical) x-ray for tooth #9 and an additional PA (periapical) x-ray for tooth #21. Plaintiff again refused Dr. Highsmith's recommendation for treatment of tooth #21.

On April 18, 2007, plaintiff submitted a MSR for his request to have a tooth extracted. On June 8, 2007, plaintiff again submitted a MSR requesting an extraction. On June 15, 2007, plaintiff advised Dr. Highsmith that he agreed to have tooth #21 extracted. Dr. Highsmith performed oral surgery to remove the diseased tooth. Dr. Highsmith removed the lesions from plaintiff's mouth, sent the lesions to be biopsied and prescribed pain medication for plaintiff's recovery.

According to Dr. Highsmith, the dental treatment she provided to plaintiff's tooth #24 was unrelated to the dental treatment or recommendations she provided to treat tooth #21. Plaintiff's tooth #21 was infected and required dental attention to prevent further harm to him. Plaintiff's tooth #24 was not infected, decayed, or deteriorating. In Dr. Highsmith's medical judgment, to the extent plaintiff experienced any dental pain, his pain was caused by the dental fistula and disease at tooth #21, or the external gingivitis at tooth #24 because of his poor dental hygiene.[6]

---

[6]Plaintiff "denies" this fact, stating that he experienced pain when his filling fell out.

Plaintiff made no other complaints to Dr. Highsmith about tooth #24 after he received the temporary crown on September 15, 2006. Dr. Highsmith provided dental treatment to plaintiff to the best of her ability and dental judgment. After plaintiff's release from prison, his dental records report no complaints of pain at tooth #24 or subsequent treatment to tooth #24.

**IV.     Discussion**.

In analyzing plaintiff's claims of deliberate indifference to a serious medical need, the Court is mindful of the Eighth Circuit's admonishment: "Toothaches can be excruciatingly painful, and dental care is an important part of proper health care." Hartsfield v. Colburn, 491 F.3d 394, 397 (8th Cir. 2007). The Eighth Circuit has reversed a number of summary judgment decisions in favor of prison officials and prison dentists who delayed as few as three weeks in providing dental care for an inmate. See id. (citing cases). In fact, the Eighth Circuit reversed the Court's preservice dismissal of this action, finding a potential Eighth Amendment violation because plaintiff alleged "a complete failure to treat tooth #24 because [he] would not agree to extraction of another tooth." Mosely v. Highsmith, No. 08-1431, 2009 WL 454928, *1 (8th Cir. Feb. 25, 2009). Now, with the benefit of medical records, affidavits, and summary judgment briefing, the Court concludes that plaintiff's allegation of a failure to treat tooth #24 does not rise to the level of an Eighth Amendment violation.

"'It is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs.' Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000). In a deprivation of medical care case, the inmate must show (1) an objectively serious medical need; and (2) the defendants actually knew of

the medical need but were deliberately indifferent to it. See Grayson v. Ross, 454 F.3d 802, 808-09 (8th Cir. 2006).

"An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.' See Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997), quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). '"To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk." Rather, a plaintiff must demonstrate the official actually knew of the risk and deliberately disregarded it.' Vaughn v. Greene County, Ark., 438 F.3d 845, 850 (8th Cir. 2006), quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994). The determination that prison officials had actual knowledge of a serious medical need may be inferred from circumstantial evidence or from the very fact that the risk was obvious. See Farmer, 511 U.S. at 842. If prison officials have actual knowledge of a serious medical need, and fail to take reasonable measures to address it, they may held liable for deliberate indifference. See id. at 847. 'However, "[a] showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions.' Pietrafeso v. Lawrence County, S.D., 452 F.3d 978, 983 (8th Cir. 2006), quoting Gibson v. Weber, 433 F.3d 642, 646 (8th Cir. 2006)." Jones v. Minnesota Dep't of Corrections,512 F.3d 478, 481-82 (8th Cir. 2008) (affirming summary judgment for defendants in case of prisoner who died of pulmonary edema, where no reasonable jury could have concluded that the defendants were deliberately indifferent).

Defendants assert Dr. Highsmith is entitled to summary judgment because plaintiff is unable to establish that his request for a filling for tooth #24 constituted a serious dental need and Dr. Highsmith knew of and disregarded a serious dental need. Defendants argue that based on

undisputed material facts, a jury could not reasonably find that plaintiff had a serious dental need that was treated with deliberate indifference.

Viewing the facts in a light most favorable to plaintiff, plaintiff lost a filling at tooth #24 in April 2006, and he complained of pain. In his affidavit, he states that the tooth was cracked and the sharp edges on the corner cut into his tongue and lip and made it difficult to eat. He also states that food particles "would get caught in the cracked space and cause infections and further pain in the gum." Mosely Aff., ¶ 10.

On May 2, 2006, Dr. Highsmith took an x-ray of tooth #24, which revealed a chip on the corner of the tooth. She evaluated the chip as a horizontal chip across the tooth without signs of dental cavity, decay, abscess, infection, or root damage. Dr. Highsmith considered filling the chip at tooth #24 as plaintiff had requested; however, once she further examined the tooth, she concluded that the tooth would not hold a filling. She also believed that a filling could cause further damage to the existing tooth and possibly cause the tooth to break off at the gum line. According to Dr. Highsmith's medical judgment, a filling at tooth #24 was not a dental necessity or even a dental possibility because the tooth would not hold a filling.

In Dr. Highsmith's judgment, the cause of plaintiff's pain was the abscessed tooth #21.[7] She explained to plaintiff that the cause of his pain was the radicular abscessing (i.e., infection at the root) of tooth #21, not the chip of tooth #24. See Defs.' Statement of Uncontroverted Material Facts, ¶ 20. Plaintiff refused to have tooth #21 removed, against medical advice. On August 18, 2006,

---

[7]Dr. Highsmith also considered the external gingivitis at tooth #24 as a potential source of pain. She recommended plaintiff brush his teeth more frequently.

after further complaints from plaintiff, Dr. Highsmith offered him a temporary crown for tooth #24, which was placed on September 15, 2006.[8]

An objectively "serious medical need" must be diagnosed by a physician as requiring attention or be so obvious that even a layperson would recognize the need for a doctor's attention. Plaintiff's alleged "serious medical need" was diagnosed by his treating dentist as not requiring attention. In fact, in Dr. Highsmith's opinion, plaintiff's requested course of treatment—a filling—was not a dental possibility. Although plaintiff denies that Dr. Highsmith ever communicated these facts to him, he does not deny the substance of these facts. Nor has he retained an expert to question the medical opinions and diagnoses of Dr. Highsmith. Plaintiff and Dr. Highsmith had a disagreement over the cause of his pain and, consequently, the appropriate course

---

[8]In his complaint, plaintiff alleges that after seven or eight weeks the crown broke "and almost a year has passed and plaintiff, despite complaints, has still not received any further treatment for tooth #24, and the crown is long gone." Compl., ¶ 21. Although this is not plaintiff's primary allegation regarding deliberate indifference to a serious medical need, the Eighth Circuit noted this allegation in its opinion, Mosely v. Highsmith, No. 08-1431, 2009 WL 454928, *1 (Feb. 25, 2009) (reversing preservice dismissal of complaint).

In support of summary judgment, defendant Dr. Highsmith submitted an affidavit stating that she was never made aware that the crown had fallen off. See Highsmith Aff., ¶ 52. Defendants also submitted a statement of uncontroverted material facts in which they state that plaintiff submitted no MSRs reporting that his temporary crown had fallen off or needed cementing. See Defs.' Statement of Uncontroverted Material Facts, ¶¶ 52-54.

In response, plaintiff filed an affidavit, repeating his allegation that he complained about and reported pain after his crown fell off, but "Dr. Highsmith would not replace the crown." Mosely Aff. ¶ 14. He states further that he submitted three MSRs reporting the temporary crown had come off. Id. at ¶ 15. Plaintiff has presented no specific facts or independent evidence or documentation regarding these alleged complaints or MSRs. He does not state the dates he submitted the MSRs or the names of any witnesses, nor has he submitted any medical records or the three alleged MSRs. His unsubstantiated allegations and conclusory statements regarding an alleged broken crown cannot preclude summary judgment. See Pony Computer, Inc. v. Equus Computer Sys. of Missouri, Inc., 162 F.3d 991, 997 (8th Cir. 1998) (rejecting conclusory affidavits that did not enumerate specific evidence).

of treatment. Plaintiff thought his chipped tooth #24 was the cause of his pain, and wanted it filled; Dr. Highsmith thought the infection of the root of tooth #21 was the source of plaintiff's pain, and wanted it extracted. At most, it appears that Dr. Highsmith either failed to communicate to plaintiff regarding her diagnosis, or Dr. Highsmith and plaintiff disagreed regarding the proper course of treatment. Neither is actionable under the Eighth Amendment. See Randall v. Wyrick, 642 F.2d 304, 308 (8th Cir. 1981) ("[Plaintiff's] difference of opinion over matters of expert medical judgment or a prescribed course of medical treatment fails to state a federal constitutional question.").

Although at first blush this case seems remarkably similar to Harrison v. Barkley, 219 F.3d 132 (2d Cir. 2000), the cases differ in key respects. In Harrison, plaintiff Harrison sought treatment for a cavity that was causing him pain. The dentist and prison officials refused to treat the painful cavity unless he would consent to the extraction of another tooth. Plaintiff Harrison's cavity was found by the Court to be a serious medical need because of its degenerative condition, and if left untreated indefinitely, it would likely produce agony and require more invasive and painful treatments. Moreover, plaintiff Harrison's cavity was easily treatable with a filling. Id. at 137.

Here, plaintiff had a chipped tooth, which showed no signs of dental cavity, decay, abscess, infection or root damage. Dr. Highsmith considered the nature and extent of the chip at tooth #24 to be cosmetic, and told plaintiff as much. Upon examination, Dr. Highsmith concluded that the tooth would not hold a filling, and a filling could cause further damage to the existing tooth. Additionally, Dr. Highsmith deemed the cause of plaintiff's pain to be the abscessed and infected tooth #21. In short, Dr. Highsmith found that plaintiff's requested course of treatment was not appropriate and, even if appropriate, would not lessen plaintiff's pain.

The severity of plaintiff's medical condition is also factually distinguishable from other cases in which the Eighth Circuit has found deliberate disregard of an inmate's serious dental needs. Unlike those cases, plaintiff's tooth #24 showed no signs of dental cavity, decay, abscess, infection, or root damage; plaintiff did not complain of swelling, bleeding, or pus. See, e.g., Hartsfield v. Colburn, 371 F.3d 454, 457 (8th Cir. 2004) (reversing summary judgment where inmate complained of extreme pain from loose and infected teeth, which caused blood to seep from his gums, swelling, and difficulty eating and sleeping); Moore v. Jackson, 123 F.3d 1082, 1084-87 (8th Cir. 1997) (per curiam) (genuine issue of material fact existed on whether prison dentist knew of serious dental condition, where inmate reported infected tooth with tremendous pain, swelling to the neck and face, fever, and discharge from nostril); Boyd v. Knox, 47 F.3d 966, 969 (8th Cir. 1995) (finding three-week delay in dental care can support Eighth Amendment violation where inmate presented with mouth so swollen he could not open it and pus oozing from an infection caused by impacted wisdom teeth); Patterson v. Pearson, 19 F.3d 439, 440 (8th Cir. 1994) (per curiam) (summary judgment reversed where inmate complained of excruciating pain, headaches, swollen jaw, pus coming from eye, and requested emergency medical care).

Even assuming plaintiff could establish a serious medical condition at tooth #24, he cannot establish that any medical defendant or prison official defendant acted with deliberate indifference. The record demonstrates that defendants responded reasonably to plaintiff's dental complaints. For each MSR submitted by plaintiff, he received a dental visit. He complained of dental problems on April 3, 2006, and was seen May 2, 2006; he was seen on June 9, 2006; he was seen on June 14, 2006; he complained on June 29, 2006 and July 13, 2006, and was seen on July 18, 2006; he complained on July 19, 2006, and was seen July 31, 2006; he complained on August 8, 2006, and

was seen on August 18, 2006; he complained on August 21, 2006, and was seen on August 29, 2006; he was seen on September 15, 2006; he complained on March 27, 2007, and was seen on April 3, 2007; he complained on April 18, 2007, and was seen on April 25, 2007; he complained on June 8, 2007, and was seen on June 12, 2007. Additionally, on June 14, 2006 he filed an Informal Resolution Request with the State of Missouri Department of Corrections, which was responded to on July 7, 2006. He filed an Offender Grievance on August 11, 2006, which was responded to on September 20, 2006. He appealed this grievance on October 6, 2006, and this appeal was resolved on November 8, 2006.

At no point did any dentist or prison official know of a condition that created an excessive risk to plaintiff's health and fail to act upon that knowledge. At this point the Court finds it helpful to step back and see the forest for the trees. Plaintiff has admitted that Dr. Highsmith provided dental treatment to plaintiff to the best of her ability and dental judgment. See Pl.'s Resp. to Defs.' Statement of Uncontroverted Material Facts ¶ 63. As Judge Meskill stated in his dissent in Harrison, "the Eighth Amendment 'bans only cruel and unusual *punishment*. If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify.'" Harrison, 219 F.3d at 144 (Meskill, J., dissenting) (quoting Wilson v. Seiter, 501 U.S. 294, 300 (1991)) (emphasis in original). "A prison health care provider simply does not have the requisite 'mental element' to be guilty of an Eighth Amendment violation when he or she acts, motivated by the best interests of the patient." Id. Here, Dr. Highsmith rejected plaintiff's request to put a medically unjustified and inappropriate filling on a chipped tooth, motivated by a her justifiable concern that a different dental condition was causing his pain and required immediate treatment. Neither Dr. Highsmith nor any of the defendants can

be said to have disregarded "an excessive risk to inmate health or safety," and consequently defendants are not guilty of deliberate indifference. Id. at 144 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Plaintiff has not made a jury-submissible case, and therefore summary judgment shall be entered in favor of defendants.[9]

**V.      Conclusion.**

For the foregoing reasons, the Court will grant defendants' motion for summary judgment, as they have met their burden to establish that no genuine issues of material facts exist and they are entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Dr. S.K. Highsmith, Dr. Elizabeth Conley, Dr. Ernest Jackson, Gail Wollberg, and Correctional Medical Services' motion for summary judgment is **GRANTED**. [Doc. 78]

---

[9]Plaintiff alleges in Count III that defendant Correctional Medical Services ("CMS") has an unconstitutional policy, practice, or custom to deny dental treatment to inmates. In response to summary judgment, plaintiff admits that CMS does not maintain any policy or practice to delay or deny necessary medical or dental care to inmates, and therefore the Court will enter summary judgment for defendant CMS on Count III. See Pl.'s Response to Defs.' Statement of Uncontroverted Material Facts, ¶¶ 97-98.

An appropriate judgment will accompany this memorandum and order.

                                                      **CHARLES A. SHAW**
                                                      **UNITED STATES DISTRICT JUDGE**

Dated this   28th   day of March, 2011.